## DUNNEGAN ET AL. VS. BYERS.

In ordinary suits at law, where a motion for a new trial is overruled, and the party making the motion does not except, he is presumed to have acquiesced in the decision, and will not be heard to question its correctness on error or appeal. *Quere:* Does not the same rule apply in garnishment cases?

Where a garnishee has had reasonable time to ascertain whether his creditor still holds, or has parted with, the evidence of his indebtedness, he will not be allowed, after judgment of garnishment has been rendered against him, a new trial, unless he shows that he has used due diligence.

Our statute of garnishment is broad enough to cover debts due after the issuance and service of the writ; and if not due at the time the garnishee answers, the court would have the power to continue the case until maturity of the debt, or render judgment with stay of execution.

*Appeal from Independence Circuit Court.*

Hon. BEAUFORT H. NEELY, Circuit Judge.

FOWLER & STILLWELL, for the appellants.

WM. BYERS, contra,

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

It appears from the transcript in this case, that, on the 20th of March, 1855, William Byers recovered judgment in the Independence Circuit Court, against James Dunnegan, Sr., for $150, debt, $10 12 damages, and for costs. That, on the 28th of July of the same year, he sued out a writ of garnishment againt James Dunnegan, Jr., and William Hargiss, reciting said judgment, and alleging that they had in their hands and possession, goods and chattels, moneys, credits and effects, belonging to the judgment debtor, &c.

At the return term of the writ, (September, 1855,) allegations

and interrogatories were filed by Byers, in accordance with the statute, against the garnishees; to which they answered, among other things, that on or about the 1st of March, 1855, they purchased of said James Dunnegan, Sr., a stock of goods, of the value of, from $1650 to 1700. That the terms of the purchase were a credit of twelve months, with interest, with the privilege of other twelve months, if desired by them, at ten per cent. interest. That they executed their promissory note for the whole amount of the purchase money, (the precise amount not remembered) payable to said James Dunnegan, Sr., or order, and delivered the same to him; since which time they had no knowledge where it was, who owned it, or anything about it, other than as stated above. That they had paid nothing upon the note, owed the whole of it to the owner, but it was not due.

The following is the record entry of the submission of the cause, and judgment of the court, (18th September, 1855.)

"This cause was submitted to the court (by the parties) upon the allegations and interrogatories of the plaintiff, and the answer of the defendants, and the evidence in the cause, and the court, after hearing all the evidence, and being sufficiently advised in the premises, found for the plaintiff, that said defendants at the time of service of the writ of garnishment upon them in this case, were indebted to the said James Dunnegan, Sr., in a greater sum than the amount of the said judgment in favor of said Byers against said James Dunnegan, Sr., and which becomes due on the 1st of March, 1856; that the said Byers, on the 20th day of March, 1855, recovered judgment against the said James Dunnegan, Sr., as alleged, &c., for the sum of $150 as his debt, and $10 12 as his damages, with his costs, and that said debt, damages and interest thereon amount to the sum of $164 00. It is therefore considered by the court, that the said plaintiff do have and recover, of and from the said defendants as garnishees of the said James Dunnegan, Sr., the said sum of $164, with interest thereon, at the rate of six per cent. per annum, from this date until paid: and that execution in this case shall not issue until

the 1st day of March, A. D. 1856, and that the costs of this suit, which have now accrued, be paid out of said sum when collected."

The garnishees filed a motion asking a new trial or hearing, on the following grounds:

"That, at the time they filed their answer to the interrogatories, &c., they did not know, and consequently did not state, whether the note they had given to the judgment debtor, James Dunnegan, Sr., and which was mentioned in said answer, had been transferred, or whether the same was held or owned by him at the date of the service of the said garnishment or not. They state, that since the rendition of said judgment against them, at the present term of this court, they have been informed, and believe that said promissory note was transferred by the said judgment debtor, who was the holder and owner of said note prior to the date of said service of the writ of garnishment, and that, in another trial, they could show the fact so to be. This discovery has been made since the trial herein had."

The motion was sworn to, and filed on the next day after the judgment was rendered.

The court overruled the motion.

No bill of exceptions whatever was taken to any decision of the court, and it does not appear what evidence was introduced upon the trial of the cause, othermise than by the record entry of the submission and judgment above copied.

Defendants appealed to this court.

1. It is assigned for error, that the court overruled the motion of appellants for a new trial.

In ordinary suits at law, where a motion for a new trial is overruled, and the party making the motion does not except, he is presumed to have acquiesced in the decision, and will not be heard to question its correctness on error or appeal. *Hopkins et al. vs. L. B. & C. M. Dowd,* 6 *Eng. Rep.* 627; *Sawyers vs. Lathrop,* 4 *Ib.* 67; *Danley vs. Robbin's heirs,* 3 *Ark.* 144. We know of no good reason why this rule should not apply in gar-

nishment cases; but if it does not, the showing made by the appellants was not sufficient to entitle them to a new trial.

The writ of garnishment was executed on them 31st of July, and the trial was had on the 18th September following. They had over a month and a half to ascertain whether their note had been transferred by Dunnegan or not, and yet they do not show that they had used any diligence to ascertain the fact. They chose to answer at their peril. *Cross vs. Haldeman*, 15 *Ark. Rep.* 203. The showing was deficient in other respects. See *White et al. vs. The State*, *present term*.

2. The only other assignment of errors is the general one, that the judgment was in favor of the appellee, when, by law, it should have been for appellants.

It appears from the face of the record, that the debt was not due when the writ of garnishment was issued, nor when the judgment was rendered, but the court stayed execution until it became due. We say until the debt became due, because the legal presumptions are in favor of the finding and judgment of the court, the evidence not appearing of record.

The appellee having put in no denial of the answer, the court, doubtless, treated it as true, (*Digest*, *chap*. 78, *sec*. 5,) and the finding of the court was not contradictory of the answer, as to the maturity of the debt.

The answer states that the appellants purchased the goods of Dunnegan on twelve months credit, with interest, *with the privilege of other twelve months if desired by them*, with ten per cent. interest, and that they executed their note for the purchase money. But it is not stated in the answer, that the "*privilege of other twelve months*" credit was inserted in the note, as one of the stipulations of the *written* evidence of the contract: nor did the appellants, in their answer, state that they desired additional credit, or insisted upon it as a right. We must presume, therefore, that the court ascertained from the evidence introduced upon the trial, that the agreement for additional credit was not

inserted 'in the note, or that it was waived by the appellants.

Whether the court allowed the appellants three days of grace upon the note, in staying execution until the 1st of March, 1856, we have no means of determining. The answer states that the goods were purchased *on or about* the 1st of March, 1855, on a credit of twelve months, &c., and a note given for the purchase money. The court found upon the evidence that the debt was due on the 1st of March, 1856, and if the appellants were entitled to grace, we must presume the court gave it to them, as the contrary does not affirmatively appear.

The only question, really, which is legitimately presented upon the record, for our consideration is, whether the appellants were subject to the process of garnishment until after the debt was due.

In cases of attachment and garnishment, either before a justice of the peace or in the Circuit Court, the statutes contemplate that the garnishee may be summoned before the debt is due, and provide for a stay of execution until after its maturity, where it is not due when the judgment is rendered. *Digest, chap.* 16, *secs.* 16, 20; *chap.* 17, *secs.* 26, 37.

The statute providing for judicial garnishments, (*Digest, chap.* 78,) is silent on this point; but it is equally as broad and comprehensive as the statutes above referred to, as to what effects of the principal debtor may be reached in the hands of the garnishee. It provides that: "In all cases where any plaintiff may have obtained a judgment, &c., and shall have reason to believe that any other person *is indebted to the defendant,* or has in his hands, &c., *goods and chattels,* moneys, *credits* and effects belonging to such defendant, such plaintiff may sue out a writ of garnishment," &c. *Sec.* 1.

Again: "The plaintiff, &c., shall file allegations and interrogatories, &c., upon which he may be desirous of obtaining the answer of such garnishee, touching the *goods* and *chattels, moneys, credits* and *effects* of the said defendant, and the value thereof,

in his hands and possession, at the time of the service of such writ, *or at any time thereafter.*" *Sec.* 3.

In Massachusetts, under a statute not more comprehensive in its terms than this, it is well settled that a debt, certainly payable at some future day, and not dependent upon a contingency, is subject to garnishment or trustee process, as it is called there. *Dans et al. vs. Ham et al.,* 3 *Mass. Rep.* 33; *Wentworth vs. Whitmore,* 1 *Ib.* 471; *Willard vs. Sheafe et al.,* 4 *Ib.* 235; *Wood vs. Patridge,* 11 *Ib.* 488; *Clark vs. Brown et al.,* 14 *Ib.* 271; *Thorndike vs. De Wolfe et al.,* 6 *Pick.* 120; *Tucker vs. Clisby et al.,* 12 *Ib.* 22; *Stone vs. Hodges et al.,* 14 *Ib.* 81.

In *Childress vs. Dickens et al.,* 8 *Yerger Rep.* 113, it was held, that by the statutes of Tennessee, a debt which was not due, could not be attached in the hands of a garnishee. That the garnishee was only required to answer, what he was indebted at the time of the summons.

But, by our statute, the garnishee is required to answer as to his indebtedness, &c., at the time of the service of the writ, *or at any time thereafter.*

We think the statute is broad enough to cover debts falling due after the issuance and service of the writ: and if not due at the time the garnishee answers, being, to some extent, in the nature of an equity proceeding, (*Walker vs. Bradley,* 2 *Ark.* 593,) the court would have the power to continue the case until the maturity of the debt, or render judgment with stay of execution.

There is no good reason, why a debt not due, should be subject to the process of attachment and garnishment, and not to judicial garnishment.

The debtor has no cause of complaint. It merely fixes a lien upon the debt in his hands, in favor of the plaintiff in the garnishment: he is allowed the privilege of answering; the benefit of all just defences; is not subjected to costs, and not required to pay the debt until it is due. A more rigid and narrow con-

33c

struction of the statute would restrict its usefulness.    The judgment is affirmed.

Absent, Mr. Justice HANLY.

NOTE.—The Hon. THOMAS B. HANLY, Judge, was absent during the remainder of this term.